1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

11   SHIMMICK CONSTRUCTION
     COMPANY, INC./OBAYASHI
12   CORPORATION,

13                                    Plaintiff,

14        v.

     OFFICINE MECCANICHE
15   GALLETTI-O.M.G. S.R.L., *et al.*,

16                                    Defendants.

17
     AND RELATED COUNTERCLAIM
18

Case No. 13-cv-2700-BAS(JLB)

**ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS FOR LACK OF
PERSONAL JURISDICTION**

**[ECF No. 44]**

19

20        Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendants Robert W.

21   Ober and Robert Ober & Associates, Inc. ("ROA")[1] move to dismiss for lack of

22   personal jurisdiction.  The remaining defendants have not joined in this motion to

23   dismiss.   Plaintiff Shimmick Construction Company Inc./Obayashi Corporation

24   ("SOJV") opposes.

25        The Court finds this motion suitable for determination on the papers submitted

26   and without oral argument.  *See* Civ. L.R. 7.1(d.1).  For the following reasons, the

27   Court **GRANTS** Defendants' motion to dismiss.

28

[1] For the purposes of this order, the Court will refer to the moving defendants as "Defendants."

## I.    BACKGROUND

Plaintiff summarizes the nature of this action as follows in its Consolidated Amended Complaint ("CAC"):

> This action arises out of the failure of Robert W. Ober and his corporate entities' to design and provide a conforming concrete batch plant to SOJV and, further, the Sicoma-related entities' manufacture, sale, and delivery of defective and nonconforming concrete mixers to SOJV for use in the construction of the San Vincente dam-raise project. The nonconformities of the batch plant Mr. Ober and his corporate entities designed and provided have caused substantial damages to SOJV. Likewise, the defective and nonconforming concrete mixers, which are one component of the batch plant, have caused significant damages to SOJV. Consequently, SOJV seeks monetary and equitable relief.

(CAC ¶ 1.) In April 2010, Plaintiff "entered into a contract with the San Diego County Water Authority for the construction of the San Vincente Dam-Raise Project[,]" which required raising the height of the dam by 117 feet. (*Id.* ¶¶ 45–49.) According to Plaintiff, "[t]o produce a sufficient amount of concrete to timely complete the construction of the dam, SOJV required a batch plant capable of producing at least six compacted cubic yards of [roller-compacted concrete ("RCC")] output per batch." (*Id.* ¶ 49.)

In June 2010, Plaintiff executed the first contract with Mr. Ober, apparently on behalf of Plant Outfitters, LLC, for the purchase of components needed for the batch plant that incorporated a proposal with various obligations related to the mixers among other things. (CAC ¶¶ 74–83; CAC Ex. 3.) Shortly thereafter, Plaintiff executed the second contract "for a comprehensive design package for a customized RCC conveyor system" with "RS1 Holdings, Inc. dba Plant Architects and Plant Outfitters (Plant Architects)." (CAC ¶ 85; CAC Ex. 4.) The Sicoma Defendants—which consist of Officine Meccaniche Galletti-O.M.G. S.r.l. ("OMG"), Societa Italiana Construzione Macchine S.r.l. ("Sicoma Italy"), and Sicoma North America, Inc.—are parties to this action because they allegedly "manufactured the concrete mixers and wear parts for the concrete mixers (i.e., parts that are expected to wear over time due to use)[.]" (CAC ¶¶ 5–15.)

On November 11, 2013, Plaintiff commenced this action against Sicoma North America.  On February 3, 2014, Plaintiff filed another complaint in the Orange County Superior Court against Mr. Ober, ROA, RS1 Holdings, Plant Architects, LLC, and Plant Outfitters (collectively, "Ober Defendants"), which was eventually removed to federal court.[2]

On June 9, 2014, the Court granted the parties' joint motion to consolidate the two aforementioned actions with this action as the lead case and later-filed action as the member case.   On June 23, 2014, Plaintiff filed its consolidated amended complaint.  In responding to the CAC, Sicoma North America filed its answer and counterclaim to the consolidated amended complaint, and OMG and Sicoma Italy also filed their answer.

Plaintiff's consolidated amended complaint asserts causes of action that range from breach of contract, breaches of warranties, and violations of California's Unfair Competition Law.  There are six causes of action asserted against the Ober Defendants and four asserted against the Sicoma Defendants.  Defendants now move to dismiss for lack of personal jurisdiction.  Plaintiff opposes.

## II.   LEGAL STANDARD

When the parties dispute whether personal jurisdiction over a foreign defendant is proper, "the plaintiff bears the burden of establishing that jurisdiction exists." *Rios Props. Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  In ruling on the motion, the "court may consider evidence presented in affidavits to assist in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).  Where the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Bryton Purcell*

---

[2] *Shimmick Construction Company, Inc./Obayashi Corporation v. Ober*, No. 14-cv-952-BAS(JLB).

*LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009). "In determining whether the plaintiff has met this burden, the Court must take the allegations in the plaintiff's complaint as true and resolve the disputed jurisdictional facts in the plaintiff's favor." *Nissan Motor Co., Ltd. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1158 (C.D. Cal. 2000) (citing *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995)). A prima facie showing means that "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Unocal*, 248 F.3d at 922.

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Both the California and federal long-arm statutes require compliance with due-process requirements. Fed. R. Civ. P. 4(k)(2); *Pebble Beach*, 453 F.3d at 1155; *see Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 150, 161 (9th Cir. 2007).

There are two types of personal jurisdiction: general and specific. General jurisdiction "enables a court to hear cases unrelated to the defendant's forum activities[.]" *Fields v. Sedgewick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir. 1986). Specific jurisdiction allows the court to exercise jurisdiction over a defendant whose forum-related activities gave rise to the action before the court. *See Bancroft & Masters, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

The Ninth Circuit employs a three-part test to determine whether the defendant's contacts with the forum state are sufficient to subject it to specific jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Under the three-part inquiry, specific jurisdiction exists only if: (1) the out-of-state defendant purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of the forum's laws; (2) the cause of action arose out of the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1072 (9th Cir. 2001).

The plaintiff bears the burden of satisfying the first two prongs of this specific-jurisdiction test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Pebble Beach*, 453 F.3d at 1155.

## III.   DISCUSSION

Defendants argue that the Court does not have either general or specific jurisdiction over them. They also argue that they are protected by the fiduciary-shield doctrine and that jurisdiction cannot be conferred through the alter-ego doctrine or under an agency theory. In response, Plaintiff argues that each prong of the specific-jurisdiction test weighs in its favor. It also argues that jurisdiction is proper under the alter-ego doctrine and an agency theory. Plaintiff does not, however, contend that Defendants are subject to general personal jurisdiction. Both parties submit evidence in support of their respective positions.

Under the first prong of the specific-jurisdiction test, the plaintiff must establish that the defendant either purposefully availed themselves of the privilege of conducting activities in California, or purposefully directed their activities toward California. *Schwarzeneggar*, 374 F.3d at 802. "A purposeful availment analysis is most often used in suits sounding in contract." *Id.* "A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id.*

"A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzeneggar*, 374 F.3d at 802. Although contacts must be more than random, fortuitous, or attenuated, contacts that are "isolated" or "sporadic" may support specific jurisdiction if they create

a "substantial connection" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). "[I]f the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986) (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984) (solicitation of distributorship agreement); *Taubler v. Giraud*, 655 F.2d 991, 994 (9th Cir. 1981) (solicitation of California market by sending of wine samples)). "Similarly, conducting contract negotiations in the forum state will probably qualify as an invocation of the forum law's benefits and protections." *Id.*

### A.    Fiduciary Shield Doctrine

Under the fiduciary-shield doctrine, "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989); *see also Advanced Skin & Hair, Inc. v. Bancroft*, 858 F. Supp. 2d 1084, 1089-90 (C.D. Cal. 2012). In other words, "[t]he mere fact that a corporation is subject to local jurisdiction does not necessarily mean its nonresident officers, directors, agents, and employees are suable locally as well." *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999). "Rather, there must be a reason for the court to disregard the corporate form." *Davis*, 885 F.2d at 520.

Though there is ample legal authority supporting the proposition that the fiduciary-shield doctrine does not protect corporate officers who engage in tortious conduct, the same cannot be said for claims for contractual breaches. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) (finding jurisdiction over individual employees of a corporation who were "primary participants in an alleged [tortious] wrongdoing intentionally directed at [the forum state]"); *Seagate Tech. v. A.J. Kogyo Co.*, 219 Cal. App. 3d 696, 703 (1990) (agreeing with rule that "where corporate officers are alleged

to have engaged in intentional tortious activity, directed at a California resident, jurisdiction over them is proper"); *Taylor-Rush v. Multitech Corp.*, 217 Cal. App. 3d 103, 118 (1990) (agreeing with principle that "intentional tortfeasors should be prepared to defend themselves in any jurisdiction where they direct their alleged tortious activity"); *see also Dish Network L.L.C. v. Vicxon Corp.*, 923 F. Supp. 2d 1259, 1264 (S.D. Cal. 2013) (Lorenz, J.) (finding chief executive officer who was "primary participant" and "moving force" behind corporation's alleged copyright-infringing activity is not protected by the fiduciary-shield doctrine). In fact, the Supreme Court has held that an out-of-state party does not purposefully avail itself of a forum merely by entering into a contract with a forum resident, from which it may be inferred that corporate officers are at least initially afforded some protection under the fiduciary-shield doctrine in actions sounding in contract. *See Burger King*, 471 U.S. at 478.

That said, the Supreme Court has also "long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests, or on 'conceptualistic . . . theories of the place of contracting or of performance." *Burger King*, 471 U.S. at 478-79 (citations omitted). Instead, it has "emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up the business transaction.'" *Id.* at 479. "It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.*

Plaintiff urges the Court to engage in *Burger King*'s analysis for determining whether a court may exercise jurisdiction over a defendant through a contractual relationship. (Pl.'s Opp'n 4:1–23.) However, the mandated minimum-contacts analysis would only resolve whether the Court properly exercises jurisdiction over the signatories to the contract. There is no challenge as to the exercise of jurisdiction over RS1 Holdings, Plant Architects, and Plant Outfitters, which are the signatories to the

contracts at issue in this action; had Mr. Ober been the signatory on the contracts in his individual capacity, then it is possible that the exercise of jurisdiction over Mr. Ober would have been appropriate under *Burger King*.   *See* 471 U.S. at 478-79. Consequently, before the Court engages in the minimum-contacts analysis as to Defendants, it must first determine whether Plaintiff may pierce the corporate veil.

As Defendants astutely point out, Plaintiff fails to provide any legal authority applying the fiduciary-shield doctrine to contract disputes to determine personal jurisdiction.   Plaintiff altogether skips discussing this issue—beyond making the conclusory assertion that "in the Ninth Circuit, the fiduciary-shield doctrine no longer has force"—and operates under the presumption that the distinction between actions sounding in tort as opposed to those sounding in contract is not relevant for jurisdictional purposes.  (Pl.'s Opp'n 6:4–18.)

In fact, Plaintiff references the fiduciary-shield doctrine exactly one time in its opposition brief on page 6, line 17, citing *Blinglet, Inc. v. Amber Alert Safety Ctrs., Inc.*, No. C 09-05156, 2010 WL 532388, at *1 (N.D. Cal. Feb. 6, 2010).  However, *Blinglet* involved allegations of fraud in the inducement.  *Id.*  Such tortious conduct in *Blinglet* was correctly not afforded the protection of the fiduciary-shield doctrine, and is consistent with legal authority that does not allow corporate officers to hide behind the doctrine for their tortious conduct.  *See, e.g.*, *Calder*, 465 U.S. at 790.

The case law demonstrates that Plaintiff's presumption is mistaken.  Therefore, without more, and unless some exception applies, Plaintiff fails to make a prima facie showing that the fiduciary-shield doctrine does not protect Defendants.

**B.     Piercing the Corporate Veil**

"Because the corporate form serves as a shield for the individuals involved for purposes of liability as well as jurisdiction, many courts search for reasons to 'pierce the corporate veil' in jurisdictional contexts parallel to those used in liability contexts." *Davis*, 885 F.2d at 520.   "[T]he corporate form may be ignored (1) where the

corporation is the agent or alter ego of the individual defendant, or (2) where a corporate officer or director authorizes, directs, or participates in tortious conduct." *Intersource OEM, Inc. v. SV Sound, LLC*, No. 2:14-cv-01219-ODW(SSx), 2014 WL 3444720, at *4 (C.D. Cal. July 11, 2014) (citations omitted) (citing *Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985); *Flynn Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984)); *see also Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999) (corporate officers cannot "hide behind the corporation where [the officer was] an actual participant in the tort.").

Because the second means of piercing the corporate veil is limited to actions sounding in tort, it is not relevant to the jurisdictional analysis in this action. That said, if Defendants qualify as alter egos or agents of the other Ober Defendants, then Defendants may be subject to this Court's jurisdiction. *See Intersource OEM*, 2014 WL 3444720, at *4. It is under the alter-ego and agency theories that Plaintiff suggests an exception to the fiduciary-shield doctrine applies. (Pl.'s Opp'n 16:22–23:28.)

### 1.   Alter Ego

"To apply the alter ego doctrine, the court must determine (1) that there is such unity of interest and ownership that the separate personalities of the corporation *and* the individuals no longer exist and (2) that failure to disregard the corporation would result in fraud or injustice." *Flynn*, 734 F.2d at 1393 (emphasis added) (citing *Watson v. Commonwealth Ins. Co.*, 8 Cal. 2d 61, 68 (1936)). In other words, "to avail [itself] of the doctrine, plaintiff must allege two elements: First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774, 782 (N.D. Cal. 2011) (citing *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App.

4th 523, 526 (2000)). Mere "[c]onclusory allegations of alter-ego status are not sufficient." *Monaco v. Liberty Life Assurance Co.*, No. C06-07021, 2007 WL 1140460, at *4 (N.D. Cal. Apr. 17, 2007). That said, only a prima facie showing of jurisdiction over the defendants is necessary to pierce the corporate veil. *Flynn*, 734 F.2d at 1393-94.

Beginning with the second prong, Plaintiff contends that if certain allegations are proven, "these allegations would support a finding that there would be an inequitable result if Mr. Ober and the Ober Entities are not treated as one single entity because the allegations indicate that the true corporate structure of the Ober Entities was concealed from SOJV." (Pl.'s Opp'n 20:24–21:14.) The allegations that Plaintiff refers to are: (1) Mr. Ober represented himself as the president of ROA; and (2) Mr. Ober presented Plaintiff with a proposal for a batch plant, which has several entities listed on the proposal's letterhead, signed the proposal on behalf of "Plant Architects + Plant Outfitters," and "the proposal was incorporated into the First Contract." (*Id.*) It is unclear how these allegations, if proven, would suggest that any injustice would fall upon Plaintiff. *See NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 992 (E.D. Cal. 2012) ("To prove injustice, the plaintiff must be more than just a creditor attempting to recover on unsatisfied debts; it must show that a defendant's conduct amounted to bad faith"). Rather, these allegations only bolster the idea that Mr. Ober was acting his capacity as an officer of the other Ober Defendants when negotiating and executing the contracts with Plaintiff.

Plaintiff presents the same defective reasoning regarding the circumstances leading to the execution of the Second Contract. (Pl.'s Opp'n 21:16–22:9.) However, just as circumstances regarding the First Contract fail to demonstrate any injustice, so do the circumstances regarding the Second Contract. *See NuCal Foods*, 887 F. Supp. 2d at 992.

//

//

13cv2700

Though a defendant's lack of sufficient corporate funds may support the idea that a plaintiff would suffer from an injustice, Plaintiff only directs the Court's attention to a single conclusory allegation in the CAC that Plant Outfitters is "insolvent or close to insolvency." (Pl.'s Opp'n 22:18–23:2 (citing CAC ¶ 38).) That allegation is the only one in the CAC that mentions possible insolvency of any defendant. In other words, there are no allegations suggesting insolvency or undercapitalization of the remaining Ober Defendants. Defendants rebut Plaintiff's assertion with evidence. Specifically, they provide evidence in the form of Mr. Ober's declaration, which states that both Plant Architects and Plant Outfitters are "adequately capitalized" and have "never transferred any assets to any other entity that left [themselves] undercapitalized." (Ober Decl. ¶¶ 11, 13.) Thus, even if the Court accepts the conclusory allegation that Plant Outfitters is insolvent, Plaintiff could seek redress from RS1 Holding and Plant Architects for any alleged injury, the adequacy of capitalization for the latter being undisputed.

Finally, Plaintiff argues that it would suffer from an injustice "if the acts of RS1, Plant Architects, and Plant Outfitters are treated as theirs alone because such recognition 'would allow Mr. Ober to avoid his liability on the two contracts he executed with SOJV through the use of the corporate fiction for that purpose.'" (Pl.'s Opp'n 22:10–17.) That assertion is supported only by a single conclusory allegation in the CAC that holds no weight in this jurisdictional analysis and is wholly inadequate. *See Monaco*, 2007 WL 1140460, at *4. Moreover, Plaintiff's argument does not suggest—even at the prima facie level—that it would suffer an injustice. Contract damages aim to make a contracting party whole following a contract's breach. *Bramalea Cal., Inc. v. Reliable Interiors, Inc.*, 119 Cal. App. 4th 468, 473 (2004). There are no facts before the Court that suggest Plaintiff cannot be made whole through a lawsuit against RS1 Holdings, Plant Architects, and Plant Outfitters without the participation of Mr. Ober and ROA in this action.

//

In sum, Plaintiff fails to make a prima facie showing satisfying the second prong of the alter-ego doctrine. *See Flynn*, 734 F.2d at 1393.  Furthermore, because Plaintiff fails to establish the second prong of the alter-ego analysis, the Court need not address the first prong to determine whether there is such unity of interest and ownership that the separate personalities of the corporation and the individuals no longer exist. *See id.*

## 2.    Agency

"The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Unocal*, 248 F.3d at 928 (quoting *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994)).  "[C]ourts have permitted the imputation of contracts where the subsidiary was 'either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself." *Chan*, 39 F.3d at 1405 n.9 (citing *Gallagher v. Mazda Motor of Am., Inc.*, 781 F. Supp. 1079, 1083 (E.D. Pa. 1992); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 422-23 (9th Cir. 1977)).  The ultimate question is "whether, in the truest sense, the subsidiaries' presence substitutes for the presence of the parent." *Unocal*, 248 F.3d at 929 (quoting *Gallagher*, 781 F. Supp. at 1084).

The entirety of Plaintiff's conclusory argument invoking the agency test is the following:

> In addition to satisfying the alter ego test, SOJV has also satisfied the agency test, which supports this Court finding that the contacts to support the exercise of personal jurisdiction over the parent exist by virtue of its relationship with a subsidiary that has continual operations in the forum.

(Pl.'s Opp'n 23:13–28.)  Defendants respond by contending that "Plaintiff vaguely references the same conclusions in support of its alter ego argument without additional

factual or legal support." (Defs.' Reply 9:8–20.)

Plaintiff simply fails to identify any facts either alleged in the CAC or contained in the evidence submitted suggesting that Defendants acted in a manner substituting their presence for the presence of the other Ober Defendants. *See Unocal*, 248 F.3d at 929. Thus, the one-sentence argument is wholly inadequate to impute the other Ober Defendants' jurisdiction to Mr. Ober and ROA under an agency theory.

## IV.    CONCLUSION & ORDER

Because Plaintiff fails to successfully assert any exception, Defendants are protected by the fiduciary-shield doctrine. *See Calder*, 465 U.S. at 790. In making that determination, the Court also concludes that Plaintiff fails to make a prima facie showing that Defendants have purposefully availed themselves of the privilege of conducting activities in California, or purposefully directed their activities toward California in a manner subjecting them to this Court's jurisdiction. *See Schwarzeneggar*, 374 F.3d at 802. Consequently, the Court need not address whether this action arises from forum-related activities or whether the exercise of jurisdiction would be reasonable. *See Myers*, 238 F.3d at 1072.

In light of the foregoing, the Court **GRANTS** Defendants' motion to dismiss for lack of personal jurisdiction, and **DISMISSES** Mr. Ober and ROA from this action. Furthermore, in exercising its discretion, the Court also **DENIES** Plaintiff's request for leave to conduct jurisdictional discovery.

**IT IS SO ORDERED.**

DATED: November 12, 2014

**Hon. Cynthia Bashant**
**United States District Judge**